# Charlestown.

## B. & O. R. R. Co. *v.* Jameson.

Decided September 7, 1878.

(Absent, Moore, Judge.)

1878
August Term.

1. In an action of debt on a penal bond conditioned, that if the plaintiff should incur loss, because the obligor in the bond, the plaintiff's agent, had made way with the plaintiff's money, received by him as such agent, then if the obligor should recompense the plaintiff for such loss, the obligation should be void, or else remain in full force, the defendant may plead, as a set-off, his services rendered as such agent.

2. Quære—Could the defendant in such suit, with or without notice of his claim, under a plea of *conditions performed*, prove such services by way of *recoupment*.

Writ of error and *supersedeas* to a judgment of the circuit court of Jefferson county, rendered on 13th day of November, 1876, in an action of debt, in said court then pending, wherein the Baltimore and Ohio Railroad Company was plaintiff, and Jacob S. Jameson was defendant, awarded on the petition of said Jameson.

Hon. John Blair Hoge, judge of the third judicial circuit, rendered the judgment complained of.

Green, President, furnishes the the following statement of the case:

On March 20, 1868, Jacob S. Jameson and W. T. Jameson executed and delivered to the Baltimore and Ohio Railroad Company a bond, which was in these words:

"*Know all men by these presents*, That we, Jacob S.

1878
August Term.

B. & O. R. R. Co.
v.
Jameson.

Jameson and William T. Jameson, are held and firmly bound unto the Baltimore and Ohio Railroad Company in the full and just sum of $3,000.00, to be paid to the said company, or its certain attorney, to which payment well and truly to be made and done, we bind ourselves, and each of us, our and each of our heirs, executors and administrators, jointly and severally, firmly by these presents. Sealed with our seals — dated this 20th day of March, in the year eighteen hundred and sixty-eight.

"Whereas, Jacob S. Jameson hath been appointed by said company as agent at Duffields, on the Baltimore and Ohio Railroad : Now, the condition of this obligation is such, that if the said Jacob S. Jameson do not at all times hereafter, so long as he shall hold said office, well and faithfully perform the duties of the said office, so that said company shall suffer no loss, damage or injury on account of any act or acts, either of omission or commission, of the said Jacob S. Jameson, and without wasting, embezzling, spending, misapplying or unlawfully making way with the money, property or effects of the said company, or such as may come into his hands or under his control, while temporarily employed in any manner in the service of said company, while holding the office aforesaid. Then if the said Jacob S. Jameson, or W. T. Jameson, or either of them, or their or either of their heirs, executors or administrators, shall make due and sufficient recompense unto the said company for such loss, damage or injury, wasting, embezzling, spending, misapplying or unlawfully making way with, then this obligation to be void, else to be in full force.

"J. S. JAMESON,     [Seal.]
"W. T. JAMESON,    [Seal.]

On August 30, 1875, the Baltimore and Ohio Railroad Company instituted a suit on said bond against Jacob S. Jameson, in the circuit court of Jefferson county. At September rules, 1875, the declaration was filed. It was in the usual form. The condition of the bond being set forth at length, the declaration concludes thus :

"And the plaintiff says, that neither the said Jacob S. Jameson nor W. T. Jameson, nor either of them have kept, performed and fulfilled the conditions aforesaid of the writing obligatory, but have failed so to do, have broken, failed to comply with and perform the same; and the plaintiff says, that the said J. S. Jameson, after the execution of the writing obligatory aforesaid, and while holding the said office of agent of plaintiff at the said Duffields, in the county of Jefferson aforesaid, to-wit, between the 1st day of September, 1874, and the 1st day of April, 1875, and at divers times between said dates, the said J. S. Jameson received, as the agent of said plaintiff, at the said place, divers sums of money on account of tickets and freights, amounting to the sum of $395.00, which the said defendant, J. S. Jameson, although the plaintiff has demanded the same of the said defendant, has refused to pay said plaintiff; and the plaintiff avers, that although the said sum of $395.00 received, and which came into the hands and under the control of the said J. S. Jameson, as said agent of plaintiff, is long since due and payable, and the plaintiff has demanded the same of the said defendant, J. S. Jameson, yet neither the said J. S. Jameson nor W. T. Jameson, nor either of them, nor both of them, nor any other person, have made due and sufficient recompense unto the said plaintiff, the Baltimore and Ohio Railroad Company, for such loss, damage or injury, wasting, embezzling, spending, misapplying or unlawfully making way with said sum of $395.00 aforesaid, whereby an action hath accrued to the plaintiff to have of and from the defendant, J. S. Jameson, the sum of $3,000.00 above demanded; and although the said sum has long since been due and payable, nevertheless, the said defendant has not, nor has any other person as yet, paid to plaintiff the said $3,000.00, but has wholly neglected and refused, to plaintiff's damage $1,000.00."

At the first term of the circuit court the defendant, Jacob S. Jameson, appeared and pleaded conditions per-

formed and set-off, and filed with the last plea his bill of off-sets " for services as depot agent at Duffield's depot, rendered at the request of the plaintiff, from April 1, 1874, to April 1, 1875, $1,200.00 ;" to which pleas the plaintiff demurred, and issue thereon was joined. The court at the November term, 1876, overruled the demurrer to the plea of conditions performed, but sustained the demurrer to the plea of set-off, to which the defendant excepted. The defendant then filed a general replication to the plea of conditions performed ; and both parties having waived a jury, the court proceeded to try the issue, and found upon the same for the plaintiff, and assessed its damages at the sum of $418.03 ; and thereupon the court rendered a judgment for the plaintiff against the defendant for $3,000.00, to be discharged by the payment for $418.03, with legal interest thereon from November 13, 1876, to the day the judgment was rendered, and the costs of the suit.

At the trial of the cause the plaintiff proved the execution and delivery of said bond, and the receipt by defendant between October 31, 1874, and January 31, 1875, of $400.40, as agent of the plaintiff, for tickets sold and prepaid freight, and allowed as a credit against the same, commissions on said freight and tickets $22.65, leaving a balance due the plaintiff of $377.75. The defendant, to sustain the issue on his part, offered evidence tending to prove the charge for services as set forth in his bill of off-sets ; but the court refused to receive this evidence, and the defendant excepted to the rejection of the evidence.

The defendant obtained from a Judge of this Court a writ of error and *supersedeas* to said judgment of the circuit court.

*Daniel B. Lucas,* for plaintiff in error, relied on the following authorities:

Code W. Va. p. 609, §4; 7 Fost. (N. H.) 412; 5 Johns. 105; 18 Gratt, 722; 1 A. K. Mar. 19; 8 Mo.

309, 310; 4 J. J. Mar. 245; 3 Hayw. (Tenn.) 192; 33
N. H. 310; 3 Gratt. 87, 91, 93; 4 Gratt. 176; Sup. R.
C. Va. p. 157, §62; 1 R. C. (1809) 487; 1 Dill. 585; 22
Gratt. 595, 605; Babington on Set-off 25, 93.

*George Baylor,* for defendant in error, relied on the
following authorities:

8 Leigh 303; 5 Rob. Prac. 965, 967; 76 E. C. L. 877;
6 Rand. 519; 18 Gratt. 728; 17 Gratt. 136; Law Lib.
Vol. 5 pp. 4, 5, 6; 3 Johns. Ch. 357; Wat. on Set-off
348, 357, 358, 316, 317, 322, 142; 14 Mich. 152; 72 E.
C. L. 23, 93; 5 M. & S. 439; 72 E. C. L. 66, 879; 2
Johns. 150; 3 Leigh 78; 123 Mass. 599; 3 Mich. 281;
7 W. Va. 460; 2 Gratt. 167; Wat. on Set-off 481, 482
466, 467; *Id.* 669.

GREEN, PRESIDENT, delivered the opinion of the
Court:

The principal point involved in this case is: Did the
court err in sustaining the demurrer to the plea of set-
off? The plea of set-off is a creation of statute law.
At common law, a defendant was in no case allowed to
recover a judgment for damages for a positive claim
against the plaintiff. At common law when there were
mutual cross demands, unconnected with each other,
arising upon contract express or implied, though the de-
mands of each party were liquidated, or capable of be-
being ascertained by simple calculation, they could not
be settled in one suit; but the defendant in such case was
compelled to resort to a cross-action. To avoid a
multiplicity of suits in such cases the statutes of set-
off were enacted.

But at common law, the defendant had a right to re-
duce the plaintiff's damages in a few instances, when the
reduction claimed sprang immediately from the claim
relied on by the plaintiff. This was denominated a *re-
coupment.* This right was anciently confined within
very narrow limits and was indeed little, if any thing,

more than a mere right of deduction from the amount of the plaintiff's recovery, on the ground that his damages were really not as high as alleged. This remedy of *recoupment* was of such limited application, and so trammelled originally by technicalities, that it was of but little use, and the term *recoupment* for a time became obsolete. Yet the principle was always retained.

Recently not only has the term *recoupment* been revived, but the doctrine has sprung into new life. The rigid rules of the common law, which so restricted this right, have yielded to the advance of civilization, and a new vigor has been infused into this remedy; and it is now held, that the defendant may *recoup* generally, whenever the demands of both parties spring out of the same contract or transaction; and it opens in this country generally, the entire contract or transaction, so far as is necessary to determine the plaintiff's right to damages, and the amount of the defendant's cross-claims.

This defense of *recoupment* differs from set-off in several important particulars. First, it is confined to matters arising out of, and connected with, the transaction or contract, upon which the suit was brought; secondly, it has no regard to whether the claim be liquidated or unliquidated; thirdly, if the defendant's claim exceeds the plaintiffs, he cannot in that action recover the balance due to him. See *Ward et al.* v. *Fellers et al.*, 3 Mich. 281.

While the right of *recoupment* has been much extended in modern times, the instances and extent, to which it may be exercised by the defendant, are to a very considerable degree unsettled. In some of the States, it has been very much extended, while in other States and in England it is confined within much narrower limits.

The law in reference to *recoupment* in this State and Virginia remains to be settled. It is important, that it should, when settled, be carefully considered. It is, as we shall presently see, unnecessary to consider it in this case, as the claim of the defendant in this case

should have been permitted to have gone to the jury under his plea of set-off. The authorities, necessary to be examined in determining the true limits of *recoupment* in this State are not now accessible to this Court; and therefore it is considered better to say nothing about its limits, as the determination of the question, whether the defendant's claim could be *recouped* in this case, is unnecessary.

The defendant's claim in this case is, in my judgment, a proper set-off to the plaintiff's demand, and should have been permitted by the court to have gone to the jury, as such. The right of *recoupment* being formerly so very limited gave rise to the necessity of the enactment by statute of the defense of set-off. The oldest statutes of set-off are those, passed by the Legislature of Virginia.

The first statute of this character was passed in February, 1645, amended the next year, and still further changed by acts passed in 1658 and March, 1662. See Hen. Stat. vol. 1, p. 296; vol. 1, p. 314; vol. 1, p. 449; vol. 2, p. 110. By the last of these act, which did not materially change the case, in which set-off could be filed under the former statutes, it was provided, when a suit should be commenced for a debt, if the defendant have a bill, bond or account of the plaintiff, such debt of the plaintiff shall be discounted out of the debt, he claimeth of the defendant. See Rob. Prac., vol. 5, p. 958 note.

In the second year of George II an English statute was passed, which provided, that when there are mutual debts between the plaintiff and the defendant, one debt may be set off against the other. Our statute provides, that, "in a suit for any debt the defendant may, at the trial, prove and have allowed against such debt any payment or set-off, which is so described in his plea, or in an account filed therewith, as to give the plaintiff notice of its nature, but not otherwise." See Code W. Va., ch. 126, §4. Our statute of set-off, so far as it can

effect this case, has been substantially the same at least as far back as 1705. See *Wartman et al.* v. *Yost*, 22 Gratt. 607.

The Court of Appeals of Virginia has indicated, that their statute of set-off, which is the same as ours, was more comprehensive than the English statute of set-off ; and that under our statute set-off could in some instances be pleaded, when under the English statute it could not. Views of this character are expressed by Judge Moncure, in delivering the opinion of the court in *Allen &c.* v. *Hart*, 18 Gratt. 722 and expressly in *Wartman et al.* v. *Yost*, 22 Gratt. 605.

In the latter case it was held, that a judgment against the plaintiff, which had been assigned to the defendant, though such assignment did not amount to a legal transfer, but on an equitable transfer could nevertheless under our statute be set-off against a legal debt. The conclusion to be drawn from the English authorities is, that such a set-off could not be allowed under the English statute. It should however be observed, that under the older and perhaps sounder English decisions such set-off would have been allowed.

So in *Allen et al.* v. *Hart*, 18 Gratt. 722, it was held, that under our statutes the defense of set-off is admissible in a motion on a forthcoming bond, taken on a warrant of distress : a decision based on previous Virginia decisions, that set-off was a good defense to an avowry for rent in an action of replevin. See *Tuberville* v. *Self*, 2 Wash. 71 ; 4 Call 580 ; *Nicholson, &c.* v. *Hancock*, 4 H. & M. 491, and *Murray, Caldwell & Co.* v. *Pennington*, 3 Gratt. 91.

On the other hand the reverse has been held to be the law in England ; but Lord Kenyon, C. J., in *Sapsford* v. *Fletcher*, 4 T. R. 511, said : " It was much to be lamented, that it should have been so decided ; however, for the sake of certainty in the law, we must submit to these decisions, till the legislature alter the law." But the diverse holdings of the Court of Appeals of Virginia

and the English courts, in this respect, are not to be attributed so much to the difference in the wording of the English statute and ours, as to the disposition of the courts of Virginia, and in this country generally, to construe more liberally, than the English courts, their statutes of set-off.

Thus, according to the English decisions, a set-off is not a good defense to an avowry for rent in an action of replevin, because replevin was regarded in this respect an action *ex delicto,* as it certainly is in form, and so was not within the terms of the English statute, which allows set-off, when there are mutual *debts.* Nor does it fall any more within the words of our statute, which allows set-off "in a suit for any debt." Nevertheless the Virginia courts, construing the statute of set-off more liberally, regarded the action of replevin, after the defendant's avowry for rent, as in substance an action of debt by the defendant against the plaintiff for rent, and therefore as coming within the true intent and meaning of our statute of set-off.

The statutes of set-off in the different States differ so much, that it is difficult to deduce from their decisions any general rule as to the cases, in which set-off may be pleaded. Generally, but by no means universally, sets-off are by these statutes are confined expressly, or by fair implication, to debts; and the decisions of the courts in the different States generally require, that the demand of both the plaintiff and defendant must both be certain, or capable of being reduced to certainty by calculation, or computation : that is, these demands must be in the nature of liquidated damages, and not in the nature of unliquidated damages. If these demands are in the nature of debts, as thus explained, it has generally been held immaterial, what may be the form of the action. The substance only of the demands of the plaintiff and of the defendant is to be considered, in deciding whether a set-off is a defense in any particular case.

This we have seen is especially the case in this State

and in Virginia. The defense of set-off being allowed in the action of replevin, when the defendant avows for rent though the form of the action is for a tort. Our statute says, that "in a suit for any debt a set-off may be allowed"; and according to our decisions it matters not, what the form of the suit or proceeding may be, if it is in substance for the recovery of a debt, set-off should be allowed. Our statute in no manner defines the nature of the defendant's demand which may be set off against such a demand of the plaintiff. But the English and generally the American cases agree, that the defendant's demand to be set off must be of the same general character as the plaintiff's demand. And as by our law the plaintiff's demand must in its nature be substantially a debt, so the defendant's demand must be also substantially a debt.

In the case before us for consideration the plaintiff's demand is substantially a debt. It is nominally an action of debt for the recovery of the penalty named in a bond. But in a suit on a penal bond the substantial cause of action is the breach of the agreement, contained in the condition. *Sangster et al.* v. *The Commonwealth,* 17 Gratt. 136. What then is the breach of the agreement, which is complained of substantially by the plaintiff in this case? The agreement, complained of as broken, is that the plaintiff should suffer no loss by the defendant's making way with any money, which may come into his hands, while in the employment of the plaintiff as its agent. And the declaration alleges substantially, that in violation of this agreement the defendant did make way with $395.00 of the plaintiff's, money so received by him. Now it is obvious, that this $395.00 in money, received by the defendant for the plaintiff and not accounted for, was in its nature clearly a debt, a demand not only capable of being rendered certain by computation, but a sum absolutely fixed and certain.

It is true the form, in which this breach is laid in the declaration, is that the defendant did not compensate the

1878
August Term.

B. & O. R. R. Co.
v.
Jameson.

plaintiff for the loss, sustained by the defendant's making way with this $395.00, received by him for the plaintiff. But as the precise sum, thus made way with by the defendant, would compensate the plaintiff for its loss, and it would necessarily recover neither more nor less than this sum, the breach thus laid is obviously the same in substance, as though the breach had been the non-payment of this sum. The form even of the action, we have seen, is totally immaterial, when we are deciding, whether a defense of set-off can be made, and *a fortiori* the form, in which the breach is laid, must, in determining whether set-off can be pleaded, be entirely immaterial.

It remains then to consider, whether the set-off, pleaded by the defendant in this case, was a debt. This set-off was $1,200.00, due from the plaintiff to the defendant for services, rendered at their request as their agent. This was obviously a debt, for which the defendant could have sued the plaintiff in an action of *indebitatus assumpsit*, or debt. The usual form of action to recover such a demand would be *indebitatus assumpsit*. See Chitt. Plead., vol 1, p. 348; and the form for the recovery for such services in *indebitatus assumpsit*, given in 2 Chit. Plead. 78.

But debt for such services could be brought in the form of an *indebitatus* count in debt for services rendered and a form of such a declaration may be found in Chitt. Plead., vol. 2, p. 385. The demand of the defendant is therefore in this case obviously the proper subject for set-off.

It is contended by appellee's counsel, that the plaintiff's claim is for unliquidated damages, and that therefore the defense of set-off is not admissible. It is true, as contended by him, that the real cause of action is the breach of the agreement, and not the penalty of the bond. But in this case the breach of the agreement, which is the real cause of the action, is substantially, as we have seen, the

1878
August Term.

B. & O. R. R. Co.
v.
Jameson.

non-payment of a debt. If the condition of the bond had been to build a house, or perform any other act, the mere non-performance of which could be only compensated by the payment of damages, for the exact ascertainment of which neither the parties nor the law has fixed any criterions, the plaintiff's claim would have been substantially for unliquidated damages. *Smith* v. *Warner*, 14 Mich. 152 ; *Castilli* v. *Boddington*, 1 Ellis and Blackburn, 72, 66, 879 ; *Elling, et al.* v. *Scott & Seamon*, 2 John. 157; *Christian, et ux, &c* v. *Miller*, 3 Leigh. 83.

Thus in *Harrison* v. *Wortham & McGruder* 8 Leigh 304, the claim was an order on a third party in favor of the plaintiffs, payable at sight, which *when collected* was to be placed to the defendant's credit. The court held, that as the plaintiff's liability was not necessarily to the amount of this order; but for such damages as a jury might assess, and as the damages were wholly uncertain, and might range from mere nominal damages to the entire amount of the order, this claim would not be allowed as a set-off, it being for unliquidated damages. Had the law fixed a criterion for the ascertainment of these damages exactly, it would have been obviously held otherwise.

In the case before us the extent of the defendant's liability for the breach of the agreement, alleged in the declaration, is definitely fixed by law. It is the amount of money, received by the defendant for the plaintiff as its agent and unaccounted for by him. According to the views of a majority of the court in *Allison* v. *Bank*, 6 Rand. 226, the plaintiff in this form of action need not have set forth either the names of the persons, or the exact time, when the defendant received the several sums of money not accounted for, nor the amount so received by him, with the particularity, he might have been required to do, had the suit been a direct action of debt, to recover the sums received, instead of an action on a penal bond. But the form of the action itself, as we have seen, much less the mere form of the declaration, can

1878
August Term.

B. & O. R. R. Co
v.
Jameson.

not be material in determining the question, whether the the demand is substantially for liquidated, or for unliquidated, damages, and therefore whether.open to the defense of set-off, or not.

In the case of *Tuckie* v. *Bushley*, 4 J. Scott 13, C. B. R., (76 Eng. Com. Law R., p 864,) relied on by appellee's counsel, the declaration was for unliquidated damages on a policy of insurance, alleging a partial loss. The defendant pleaded, that there had been an adjustment, and to the amount of this adjustment, alleged in the plea, the plea further claimed certain set-off; and it was held, on demurrer, that the plea was bad. The court in its opinion assigns, as the reason of its decision, "it may be, that if the adjustment was an absolute and definite arrangement, from which neither party could recede, it would be one, against which a set-off might be pleaded, although the action was, in point of form, an action for unliquidated damages. But upon that it is unnecessary for us to express an opinion; for we think, the adjustment has not the effect of ascertaining, and rendering liquidated, the amount of the plaintiff's claim, so as to dispense with the intervention of a jury. It is not an absolute and final settlement, which is to be binding on the parties. It may, or may not, though generally it will, be binding and conclusive on the jury and on the parties, as to the amount." The decision was obviously based on the ground, that the adjustment did not in law fix a criterion for ascertaining accurately the damages. The assumption in this case, that an adjustment is not an absolute and final settlement, is in apparent conflict with the decision of this court in *Stolle* v. *Ætna Fire aad Marine Insurance Co.*, 10 W. Va. 546, where it was held, that a general *insimul computassent* count is sustained by proof of an adjustment. If this be law, and the adjustment be final, set-off could be here pleaded; and this English case would not be held to be law here, if a similar case was presented to this court. The case before us is however by no means similar, and in considering the weight, to which

it is entitled, it should also be borne in mind, that the Virginia Court of Appeals under our statute of set-off, has been more liberal in allowing the plea of set-off, than the English courts, in part from the different wording of our statute of set-off from theirs, but principally because our statute of set-off has been more liberally construed, with a view to the furtherance of its obvious policy, which is to prevent multiplicity of suits, and, as far as conveniently can be done, to effectuate in one action complete justice between the parties." See *Allen* v. *Harte*, 18 Gratt. 722 ; *Wartman* v. *Yost*, 22 Gratt. 605 ; *Tuberville* v. *Self*, 2 Wash. 71; 4 Call 580; *Nicholson, &c.* v. *Hancock*, 4 Hen. & Munf. 491; *Murray* v. *Pennington*, 3 Gratt. 91.

The case of *Tuckie* v. *Bushley*, 76 Eng. Com. Law R. 864, might be readily distinguishable from the case now before us; but if it could not, it is one which would from the general spirit of our decisions be probably not followed in this State.

The weight of the authorities in the United States is in favor of holding, in such a case as the one before us, that the plaintiff's claim is for liquidated damages, and may be met by the defense of set-off. See *Austin* v. *Feland et al*, 8 Mo. 310 ; *Culdwell* v. *Drake*, 4 J. J. Mar. 246 ; *Ragsdale* v. *Buford*, 3 Haywood R. 195. These cases lay down the law, that whenever *indebitatus assumpsit* would lie, whatever be the form of the action, set-off may be pleaded ; and if unliquidated damages are to be assessed at the discretion of the jury, set-off cannot be pleaded ; but it may be pleaded, though in one sense the damages might be called unliquidated, that is if based on pecuniary demands, as for goods sold, services rendered, money had and received, or any other cause, where *indebitatus assumpsit* would lie.

Nor does the fact, that the plaintiff's demand is secured by a penal bond, and the suit is brought on the bond, affect the defendant's right to plead set-off, if the plaintiff's claim is such, that, but for its being secured

by the penal bond, he could have brought an action of *indebitatus assumpsit* on it. *Burgess* v. *Tucker*, 5 Johns. 107.

The case of *Concord* v. *Pillsbury*, 33 N H. 311, strongly resembles the case before us. It was an action of debt on a penal bond conditioned for the faithful performance of the duties of the office of city marshal, among which duties was that of collecting and paying over to the city treasurer and others taxes collected. The defendant pleaded set-off of services performed and expenses incurred for the city, and it was held, that such defense ought to have been received.

I am therefore of opinion, that the court erred in sustaining the plaintiff's demurrer in this case to the defendant's plea of set-off. It is unnecessary to consider the other error assigned; the refusal of the court to permit the defendant, under the plea of condition performed, to prove his demand for services rendered as a *recoupment*. This point, and whether notice of the defendant's purpose of relying on it, as a *recoupment*, ought not to have been given; and whether the filing of his account with the plea of set-off was sufficient notice, were all slightly argued at the bar; but as the questions, involved in this assignment of error, are new in this State, and the authorities on the subject not now accessible to us, I deem it best to express no opinion on these questions.

The judgment of the circuit court must be reversed and annulled; and the appellant must recover of the appellee his costs in this court expended; and this court, proceeding to render such judgment as the circuit court ought to have rendered, doth overrule the plaintiff's demurrer to the defendants's plea of set-off; and doth remand the cause to the circuit court of Jefferson, to be there proceeded with in accordance with the principles laid down in this opinion, and further according to law.

JUDGES HAYMOND AND JOHNSON CONCURRED.

JUDGMENT REVERSED, AND CAUSE REMANDED.